Joel D. Zelkowitz, Esq.
Atty ID No. 083012014
Michael E. Quiat, Esq.
Atty ID No. 015911985
USCHER, QUIAT, USCHER & RUSSO
A Professional Corporation
433 Hackensack Avenue, 2nd Floor
Hackensack, NJ 07601
Phone:  201-342-7100
Fax:     201-342-1810
*Attorneys for Plaintiff, Chris Dessart*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHRIS DESSART,<br><br>Plaintiff,<br><br>vs.<br><br>PRUDENTIAL INSURANCE COMPANY OF AMERICA,<br><br>Defendant. | Civil Action No. _____<br><br><br>ECF CASE<br><br>COMPLAINT |

Plaintiff, CHRIS DESSART (hereinafter "Mr. Dessart" or "Plaintiff"), by way of Complaint against the Defendant, PRUDENTIAL INSURANCE COMPANY OF AMERICA (hereinafter "Prudential" or "Defendant"), by and through his attorneys, Uscher, Quiat, Uscher & Russo P.C., alleges as follows:

1. Plaintiff is a resident of the State of New Jersey, County of Sussex, with a primary residence located in Hamburg, New Jersey.

2. Defendant, Prudential, is a disability insurance carrier licensed to do business in the State of New Jersey with a principal place of business in Newark, New Jersey.

3. Jurisdiction and venue are proper in this Court pursuant to 29 USC § 1001 *et seq.* and 28 USC § 1331 *et seq.* and 28 USC § 1391 *et seq.*

## ESSENTIAL FACTS

4. Plaintiff, Chris Dessart (hereinafter referred to as "Mr. Dessart" or "Plaintiff"), is a 45-year-old man who lives in Hamburg, NJ. From October 2017 until the time of his disability, Mr. Dessart was a Certified Public Accountant employed as a Director/Assistant Controller and at Horizon Blue Cross Blue Shield of New Jersey (hereinafter "Horizon"), a major health insurance provider in the state of New Jersey.

5. Mr. Dessart's position as Director/Assistant Controller was a highly demanding position which required long periods of sustained concentration and focus, strong analytical and reasoning skills, clear communication skills, and a sharp memory.

6. While employed by Horizon, Mr. Dessart was a beneficiary under Horizon's Long-Term Disability (LTD) plan, underwritten and issued by Prudential (hereinafter referred to as the "Policy" attached hereto as **Exhibit A**). At all times relevant to the matter, Prudential was a fiduciary responsible for claims administration under the Policy. This Policy is an Employee Welfare Benefit Plan and is therefore covered by the Employee Retirement Income Security Act, also known as ERISA.

7. Under the Policy, Mr. Dessart is considered disabled during the elimination period and first 24 months of benefits if, due to injury or sickness, he is unable to perform the material and substantial duties of his "regular occupation" as a Director/Assistant Controller.

After 24 months, Mr. Dessart is deemed disabled if, due to injury or sickness, he is unable to perform the material and substantial duties of "any gainful occupation" for which he is reasonably fitted based on education, training or experience. (See **Exhibit A**).

## PLAINTIFF'S MEDICAL HISTORY

8. In 2012, Mr. Dessart experienced a TIA, or transient ischemic attack, also known as a mini-stroke. Mr. Dessart remained hospitalized for about 3 days after experiencing this stroke.

9. In May 2013, Mr. Dessart experienced a cerebellar infarct, which is similar to another stroke, and he was once again hospitalized.

10. Mr. Dessart began working at Horizon in or around October 2017. Shortly after he began working there, he experienced shortness of breath, a total loss of energy, significant fatigue throughout the day, worsening cardiovascular issues including palpitations, and debilitating cognitive issues.

11. In or around February 2019, Mr. Dessart started experiencing chronic and severe headaches on a daily basis. In combination with his other symptoms, these headaches were especially debilitating, and further weakened his ability to remain effective and productive in the workplace.

## PLAINTIFF'S CLAIM FOR DISABILITY BENEFITS

12. In or around October 2019, during an office visit with infectious disease specialist Dr. Fein, Mr. Dessart's blood pressure was recorded as 180/120 with a pulse of 117, which is considered a hypertensive crisis. Dr. Fein explained that this was a very serious indication that Mr. Dessart was likely on the verge of a stroke due to his staggeringly high blood pressure. Dr.

Fein advised Mr. Dessart that he had no choice but to cease working as a Director/Assistant Controller at Horizon or he would likely experience a third stroke in the near future. At that time, Dr. Fein's working diagnoses were Lyme disease and Chronic Fatigue Syndrome.

13. Mr. Dessart reluctantly accepted Dr. Fein's advice and filed a claim for Long Term Disability benefits under the terms of his employer-provided LTD Policy. Mr. Dessart also filed a claim for Individual Disability Income benefits under the terms of a private individual disability policy he had purchased with MetLife several years earlier.

14. For approximately three months after filing for disability, Mr. Dessart was confined to his bed almost 90% of the time, as he had a total loss of energy and his headaches were so painful that he had no choice but to remain in bed throughout most of each day.

15. Mr. Dessart underwent neuropsychological testing by Dr. Kenneth Freundlich in January 2020 which confirmed the presence and severity of his cognitive difficulties.

16. Mr. Dessart did see some improvement in his symptoms around late January 2020, and he became able to leave his bed for about 50% of each day. He continued to experience frequent debilitating headaches. He remained unable to engage in any sort of meaningful cognitive activity, as he was still experiencing constant fatigue and mental fogginess, as well as other debilitating symptoms such as cognitive difficulties.

17. From January through June 2020, Mr. Dessart remained at this same roughly 50% bedridden status. He experienced some days where his headaches were so intense that he could not leave his bed at all. He also experienced days where his symptoms presented themselves more mildly and he was able to accomplish some minimal cognitive or physical activity during the day.

18. During this time period, Dr. Fein made a number of adjustments to Mr. Dessart's medications and he started to see minimal improvement in both his cognitive and physical symptoms around June 2020.

19. On June 11, 2020, MetLife corresponded with Plaintiff's counsel to advise counsel that Mr. Dessart's claim for Individual Disability Income benefits had been approved. Mr. Dessart has collected such benefits through the present day.

**DEFENDANT'S DENIAL OF PLAINTIFF'S CLAIM FOR DISABILITY BENEFITS**

20. On June 30, 2020, Prudential informed Mr. Dessart that his claim for LTD benefits had been denied. Prudential asserted that the medical information on file did not support Mr. Dessart's inability to perform his own occupation as a Director/Assistant Controller, and therefore Mr. Dessart was not disabled under the terms of the Policy. In this letter, attached hereto as **Exhibit B**, Prudential specifically stated that the raw data from Dr. Freundlich's neuropsychological evaluation was reviewed in connection with Prudential's determination.

21. Mr. Dessart submitted a timely administrative appeal to Prudential dated December 8, 2020. Prudential acknowledged receipt of this appeal through a letter sent to Plaintiff's counsel dated December 15, 2020.

22. On January 7, 2021, Prudential corresponded with Plaintiff's counsel to request assistance in procuring the claim file related to Mr. Dessart's receipt of Individual Disability Income benefits from MetLife.

23. On January 11, 2021, Plaintiff's counsel corresponded with Prudential to advise that MetLife refused to produce the requested claim file.

24. On January 13, 2021, Prudential corresponded with Plaintiff's counsel to request payroll records from Horizon.

25. On January 21, 2021, Prudential corresponded with Plaintiff's counsel to advise counsel that it would be tolling the deadline to decide the appeal until it receives payroll records from Plaintiff. Prudential's correspondence further advised that once payroll records were received by Prudential, Prudential would be exercising its right to take a 45-day extension to decide Plaintiff's appeal.

26. On January 22, 2021, Plaintiff submitted the requested payroll records to Prudential. Prudential corresponded with Plaintiff's counsel that same day to advise counsel that it had received such records. Prudential's correspondence further advised counsel that a decision would be reached on or before March 8, 2021 - the 90th day since Plaintiff's appeal was submitted to Prudential.

27. On February 4, 2021, at the request of Prudential, Dr. Kenneth Freundlich once again submitted the raw test data from his January 2020 neuropsychological evaluation to Prudential. As advised in the June 30, 2020 denial letter, Prudential had previously obtained such raw data as part of its initial review of Mr. Dessart's claim. (See **Exhibit B**).

28. On March 1, 2021, Prudential corresponded with Plaintiff's counsel to advise that it would need additional time beyond the 90 day review period to decide Mr. Dessart's appeal. Prudential attributed the need for such additional time to a "delay in obtaining the Neuropsychological Raw Data for one of the clinical reviews." (See **Exhibit C**). Prudential's need for additional time to review this appeal is not reasonable or appropriate, as the record

clearly established that Prudential was already in possession of Dr. Freundlich's raw test data since as far back as June 2020. (See **Exhibit B**).

29. On March 4, 2021, after speaking with Prudential's neuropsychological reviewer, Dr. Monica Lintott, Dr. Freundlich once again sent the raw test data to Dr. Lintott via Federal Express, as requested by Prudential. This was at least the third time that Dr. Freundlich submitted this raw data to Prudential.

30. Prudential's 90-day appeal review period expired on March 8, 2021. Prudential did not communicate any decision on this appeal within the applicable appeal review period, and therefore Mr. Dessart's claim is deemed denied under the applicable regulatory guidelines. Prudential's request for additional time beyond the 90 day appeal review period is not reasonable, since the record established that Prudential was in receipt of Dr. Freundlich's raw data since as far back as June 2020, during Prudential's initial review of Mr. Dessart's claim.

31. Prudential's denial of Plaintiff's LTD benefits was wrongful, and without basis in law or fact. Prudential disregarded the evidence from Plaintiff's treatment providers as well as a neuropsychologist which corroborate Plaintiff's physical/cognitive impairments and how they preclude him from being employed in his regular occupation as a Director/Assistant Controller for Horizon. Defendant's failure to honestly consider all of the Plaintiff's medical evidence is a clear indication that Defendant was serving its own financial interests, despite its fiduciary obligations, in denying Plaintiff's claim.

32. Defendant also failed to provide a full and fair review to Plaintiff during the appeal review period and failed to give due consideration to the significant medical evidence provided by the Plaintiff. Defendant never requested that Plaintiff attend an Independent Medical

7

Examination despite language in the Policy which clearly allowed for such an examination to occur.

33. The evidentiary support for the Defendant's denial of disability benefits is both inconsistent and self-serving. Simply stated, the evidence in support of Prudential's denial of benefits does not meet the "substantial evidence" requirement of the Courts in this Circuit. *Miller v. Am. Airlines, Inc.*, 632 F.3d 837 (3d Cir. 2011).

34. Plaintiff has exhausted his administrative remedies.

35. By virtue of Prudential's failure to make a decision within the applicable appeals review period, Mr. Dessart's claim is deemed denied, and therefore Plaintiff is entitled to the Court's *de novo* standard of review in this matter.

## PLAINTIFF'S RETURN TO WORK AT HORIZON

36. At the beginning of August 2020 (prior to receiving any decision regarding the approval or denial of his claim for disability benefits), Mr. Dessart returned to work at Horizon on a part-time completely remote basis of 6 hours per day for two days each week. His first month back at work for Horizon was very difficult for him. Mr. Dessart became very tired and unfocused after about 2 hours of work and he would typically need to lie down for about a half hour after every 2 hours of work. He took a one-hour nap during his lunch break on each of these shortened workdays, which became an absolute necessity for him due to the overwhelming fatigue he experienced from this complex cognitive work.

37. During Mr. Dessart's first month back at Horizon, he would typically end his workday around 3:00pm, at which point he would collapse on his couch, physically and mentally

drained from the reduced 6-hour workday. His head felt like it was in a cloud by the afternoon and he was not capable of any meaningful cognitive thinking for the rest of the day.

38. In September 2020, Mr. Dessart transitioned to working an 8-hour workday for two days each week. Unfortunately, his symptoms still represented a significant limitation to his functional capacity. He remained hopeful that he could handle an increased workload.

39. During September 2020, Mr. Dessart still took a one-hour nap at lunch time during each of the 8-hour days he worked. He still needed half hour breaks approximately every two hours because of the fatigue he experienced as a result of engaging in complex cognitive activity. Mr. Dessart purposely arranged his schedule to work Tuesdays and Thursdays so that he would have the ability to recuperate for at least a full 24 hours between workdays.

40. In October 2020, Mr. Dessart agreed to increase his workdays to 3 days per week. His cognitive stamina did continue to improve but his energy levels and cognitive abilities were marked with crash periods which severely limited his activity. He worked on Mondays, Wednesdays and Fridays so that he could still have one day to physically and cognitively recuperate in between each of his workdays. After working each day, Mr. Dessart continued to spend the entire evening and at least half of the next day in his bed or on his couch, physically fatigued and mentally drained from the previous day's work.

41. From November 2020 through March 6, 2021, Mr. Dessart returned to Horizon in a completely remote full-time work capacity. Throughout this period, Mr. Dessart's co-workers and supervisors at Horizon have been very understanding regarding his current medical status and cognitive limitations. Mr. Dessart has not received the highly complex type of work that he

received in the past. Instead, he has received much more simple work assignments and a decreased workload.

42. Given Mr. Dessart's ongoing cognitive and physical restrictions and limitations, as verified by Dr. Fein and through cognitive testing with Dr. Freundlich, Mr. Dessart experienced significant difficulty performing the material and substantial demands of his occupation as a Director/Assistant Controller on a full-time basis. In fact, the increase in his working hours caused a significant decline to his overall health in the span of just a few months.

43. As of March 6, 2021, Mr. Dessart has accepted a demotion to a part-time position, Manager/Financial Analysis, and has accepted a significant reduction in pay. Mr. Dessart will only be working for a total of 24 hours per week, a reduction of 16 working hours per week. Mr. Dessart has accepted that given his significant physical and cognitive limitations, he is unable to perform the duties associated with his former position of Director/Assistant Controller.

## AS AND FOR A FIRST CAUSE OF ACTION

44. Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs 1 through 43 as if fully set forth again herein.

45. The Plaintiff is disabled within the meaning of the terms of the Policy and as such is entitled to the disability benefits provided thereunder.

46. Defendant's denial of Plaintiff's claim and subsequent administrative appeal was wrongful, arbitrary and capricious, and not based on substantial evidence. Furthermore, it deprived the Plaintiff of his right to a "full and fair review."

47. Moreover, Defendant is acting under a clear conflict of interest within the meaning of *Metropolitan Life Insurance Company v. Glenn*, 128 S. 2343 (2008) which conflict has poisoned their decision-making in this case, to Plaintiff's great prejudice.

48. By virtue of the foregoing, the Defendant has breached the terms of the subject Policy and have violated the requirements of the Employee Retirement Income Security Act, 29 USC §1132 (a)(1)(B), §502(a)(1)(B) and applicable regulations promulgated thereunder.

## AS AND FOR A SECOND CAUSE OF ACTION
## (IN THE ALTERNATIVE)

49. Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs 1 through 48, as if fully set forth again herein.

50. The Defendant's actions also constitute a breach of Defendant's fiduciary duty owed to the Plaintiff under §502(a)(3) and 29 USC §1132(a)(3). Placing its own interests over that of the Plaintiff, Defendant has failed to justly and equitably administer this claim, causing Plaintiff compensable equitable damages distinct, separate and apart from his right to benefits under the said Policy.

51. The fiduciary duties breached by Defendant include, *inter alia* (i) failing to honestly consider all the evidence in support of Plaintiff's claim before denial of benefits, (ii) disregarding without a good faith basis the opinions of Plaintiff's treating physicians, providers, and neuropsychological evaluator; (iii) selectively choosing which evidence to credit and which to ignore so as to deprive Plaintiff of benefits to which he is entitled under the Prudential LTD Policy; (iv) claiming on the sole basis of a paper review that Plaintiff is not disabled under the terms of the Prudential LTD Policy; and (v) failing to decide the appeal within the applicable 90-day appeal review period.

11

WHEREFORE, Plaintiff demands that this Court enter judgment against the Defendant as follows:

(a) Declaring Plaintiff disabled within the meaning of Prudential's LTD Policy;

(b) Ordering the Defendant to pay Plaintiff all LTD benefits to which he is entitled;

(c) Alternatively, awarding Plaintiff all equitable, make-whole relief under the Second Cause of Action;

(d) Under both the First and the Second Causes of Action, awarding to Plaintiff his costs of suit, including reasonable attorneys' fees;

(e) Awarding to Plaintiff interest on all unpaid benefits and waiving any and all premium charges accruing with respect to said Policy of insurance; and

(f) Granting such other and further relief as this Court may deem just and equitable.

USCHER, QUIAT, USCHER & RUSSO
A Professional Corporation
433 Hackensack Avenue, 2nd Floor
Hackensack, NJ 07601
Phone  201-342-7100
Fax     201-342-1810

Dated:  March 9, 2021          By:     /s/ Joel D. Zelkowitz
                                       JOEL D. ZELKOWITZ
                                       Atty ID No. 083012014
                                       *Attorneys for Plaintiff, Chris Dessart*